Jimmy C. Moore #94955
IDOC-ISCC
P.O. Box 70010
Boise, ID 83707

Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

oOo

JIMMY C. MOORE,                                    )
                                                   ) Case No:_____
          Plaintiff,                               )
vs.                                                )
                                                   )
                                                   )    COMPLAINT
RANDY VALLEY III, sued in his official             )       AND
capacity, for injunctive relief, and his successor ) DEMAND FOR JURY TRIAL
in office; RONA SIEGERT; CORIZON INC.,             )
CORIZON LLC, J. DOE 1, REBEKAH                     )
HAGGARD, STEVEN MENARD, TONYA                      )
MCMILLIAN, GEN BREWER, CMS PLOSS                   )
CENTURION INC., CENTURION OF IDAHO                 )
LLC; KARA BOYER, MICAH CRAWFORD,                   )
KASEY HOLM, RADA SADACHARN,                        )
MURRAY YOUNG, BRANDON G. ISSAACS;                  )
sued in their individual and official capacities,  )
and their successors in office,                    )
                                                   )
          Defendants.                              )
_____)

A. JURISDICTION

  X  42 U.S.C. § 1983
  X  Other federal statutes: 28 U.S.C. § 1331; 28 U.S.C. § 1346; 28 U.S.C. §§ 2201-2202.

B. PLAINTIFF

   Plaintiff pro se, Jimmy C. Moore, is a citizen of the State of Idaho, presently housed at the Idaho State Correctional Center, Boise, Idaho.

C. DEFENDANTS

1. Defendant Randy Valley III, is the current Warden of ISCC and is sued in his official capacity

COMPLAINT AND DEMAND FOR JURY TRIAL-1

only for carrying out any Court Ordered injunctive relief that may be ordered for plaintiff as demonstrated more fully herein.

2. Defendant, Rona Siegert, RN, CCHP-RN, has been an employee of IDOC since 2005, and has held the position of Health Services Director for IDOC since 2008 to present.

3. Defendant Siegert as the Health Services Director, is required to follow the Idaho Nurse Practice Act, who responsibilities include providing oversight and monitoring of IDOC's contract medical provider Corizon Health, and now Centurion. She also supervises several employees, including Medical Contract Monitors, of which some are licensed RNs in the state of Idaho. Siegert and her staff are responsible for conducting audits of Corizon and now Centurion. These audits include contract performance audits to ensure that Corizon and now Centurion were/are compliant with the contract for medical services, IDOC SOPs, NCCHC Standards and Policies regarding the delivery of healthcare as set forth more fully herein.

4. Defendant Siegert does not have qualified immunity for the reasons set forth more fully herein, and is sued in her individual and official capacity for injunctive and declaratory relief.

5. Defendant Corizon Inc. is a for-profit Company duly incorporated under the laws of the state of Missouri, with its principal business and Corporate Headquarters located at 105 Westpark Drive, Suite 200, Brentwood TN 37027.

6. As part of Corizon Inc.'s profitable enterprise doing business in Idaho they created a parent company, Corizon LLC, who was under contract with the State of Idaho, Idaho Department of Correction through the end of September 30, 2021, to provide medical treatment services that meet state and federal law, and as a private actor was during the events complained of herein engaging in joint activity with IDOC to provide these medical services by being subjected to governmental compulsion to follow IDOC Standard Operating Procedure's (SOPs) that are equivalent to statutory law, National Commission on Correctional Health Care (NCCHC) Standards, Policies, and state and federal law standards.

7. Corizon Inc. has a policy, practice and custom of having Corizon LLC submit all recommended medical procedures by off-site local specialists in the Boise Idaho area to their Corporate Headquarters "Utilization Team" for approval or denial of the specialists recommended continuity of care at community based standards under Idaho Law, I.C. § 6-1012, as demonstrated more fully herein.

8. Plaintiff sues Corizon Inc. and Corizon LLC for their actions taken under color of law for their failure to meet the continuity of care at community based standard of healthcare and deliberate indifference in failing to treat Plaintiff's orthopedic issues as set forth more fully below.

9. Defendant, J. Doe 1, is/was an employee of Corizon Inc. located at 105 Westpark Drive, Suite 200, Brentwood TN 37027, as a Utilization Manager. The true name will be substituted upon Plaintiff learning of it.

10. J. Doe 1 is responsible for processing treatment requests received from Corizon LLC for IDOC Prisoners who have seen an off-site specialist for the prescribed medical treatment that meets the continuity of care at community based standards by processing it for approval or denial. J. Doe 1 and the team he/she supervises denied Plaintiffs prescribed orthopedic shoulder surgery

that was in accordance with state law, I.C. § 6-1012, so as to meet Corizon Inc. contractual agreement for the delivery of the continuity of care at community based care that resulted in permanent and physical harm to Plaintiff's as demonstrated more fully herein.

11. Defendant Rebekah Haggard, was an employee of Corizon Health Inc., who was licensed to practice medicine in the state of Idaho, and from August 2016 until January 2018 served as Corizon's Idaho Regional Medical Director ("RMD"). Her role as RMD included responsibility for overseeing medical care at all Idaho prison facilities at which Corizon provided medical care, including ISCI. In August 2017, she transitioned from the RMD role and became the ISCI Site Medical Director ("SMD"), although she continued to perform the RMD duties while Corizon searched for a new RMD. Corizon hired a new RMD, Dr. Steven Menard, who began work in January 2018. From January 2018 she performed the ISCI SMD duties until January 2019, at which time Defendant Dr. Steven Menard, began work in January 2018 as the RMD. Accordingly, he is familiar with the standard of care in prison, including appropriate treatment options for orthopedic care in prison, including appropriate treatment options for orthopedic complained of shoulder and knee pain, and failed to meet that standard of care for Plaintiff as set forth more fully below. Migilori was required to provide the continuity of care at community based standards as set forth in I.C. § 6-1012, and federal standards regarding plaintiffs access to care for pain management and continuing treatment of his orthopedic injuries as described more fully below.

12. Defendant Steven Menard, was an employee of Corizon Health Inc. as the RMD starting in January 2018. He is licensed in Idaho as an osteopathic doctor since 2017, with a specialty in family medicine. He also held an Alabama medical license while on active duty with the United States Air Force from 2011-2017. When he obtained his Idaho medical license, he let his Alaama medical license expire.

13. Prior to joining Coriozn in January 2018, he was a family-medicine-trained flight surgeon for the United States Air Force, most recently serving on active duty as the commander for the flight medicine clinic at Nellis Air Force Base and Creech Air Force base, managing 15 medical providers and having responsibility for 30 other support staff. He continued his service with the Idaho National Air Guard as a flight surgeon at Gowen Airfield.

14. Accordingly, Menard is familiar with the standard of care in prison, including appropriate treatment options for orthopedic caref in prison, including appropriate treatment options for orthopedic complained of shoulder and knee pain, and failed to meet that standard of care for Plaintiff as set forth more fully below. Migilori was required to provide the continuity of care at community based standards as set forth in I.C. § 6-1012, and federal standards regarding plaintiffs access to care for pain management and continuing treatment of his orthopedic injuries as described more fully below.

15. Defendant Tonya McMillinan was Health Services Administrator for Corizon. Her responsibilities included general oversight of the administration of medical and dental care at ISCI, serving as the point-person for the delivery of medical care at ISCI, and scheduling of staff and specialists for treatment of plaintiffs vision exams as set forth more fully herein.

16. Defendant Gen Brewer was the Director of Nursing for Corizon at ISCI. Her duties and responsibilities include facilitating nursing care in accordance with the Idaho Nurse Practice Act, NCCHC standards, SOPs and Policies established by IDOC and its contract with Corizon, including but not limited to IDOC SOP 401.06.03.001, NCCHC Access to Care standard P-A-01, and 401.06.03.37, and NCCHC Non-emergency Healthcare Requests and Services standard P-E-07; facilitating the delivery of safe, effective, and efficient, nursing care within ISCI facility; working with IDOC to ensure that contractual performance standards were met; collaborating with IDOC on complex patient issues to ensure appropriate care is provided. She is also responsible for the oversight and scheduling of medical appointments with on-site providers as well as outside local specialists so as to ensure delivery of unimpeded access to required healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well at ISCI.
17. Defendant CMS Ploss was an employee of Corizon at ISCI. Her duties and responsibilities included, but are not limited to, being present when Correctional Staff enter a cell at ISCI in the Restrictive Housing Unit regarding a non-responsive inmate. Phloss refused to provide treatment to Plaintiff after suffering injuries to his right shoulder right after excessive force that was unnecessarily done on him as set forth more fully below.
18. Defendants' Corizon Inc., Corizon LLC, J. Doe 1, Haggard, Mendard, McMillian, Brewer, and Ploss do not have qualified immunity for the reasons set forth more fully herein, and are sued in their individual and official capacity for injunctive and declaratory relief.
19. Defendant Centurion Inc. is a for-profit Company, with its principal business and corporate headquarters located at 1583 Spring Hill Road, Suite 600 Vienna, Virginia, 22182. As part of its profitable enterprise doing business in Idaho they created Centurion of Idaho LLC for providing Healthcare services to IDOC prisoner's from October 2021 to present that meet state and federal laws, and as a private actor was during the events complained of herein engaging in joint activity with IDOC to provide these medical services to be subjected to governmental compulsion to follow IDOC Standard Operating Procedures (SOPs), National Commission on Correctional Healthcare (NCCHC) Standards as set forth more fully below.
20. Centurion Inc. has a policy, practice and custom of having Defendant Centurion of Idaho LLC to follow their Corporate Headquarters policies and operating procedures in providing their delivery of healthcare services as they are who dictates how it is to be delivered, and performed.
21. Defendant Kara Boyer is an employee of Centurion of Idaho LLC as the Health Services Administrator. Her duties and responsibilities included general oversight of the administration of medical and dental care at ISCC, serving as the point-person for the delivery of unimpeded access to required healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well at ISCC. Along with coordinating and scheduling of staff and specialists for treatment of plaintiff's requests for treatment as set forth more fully herein.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

22. Defendant, Micah. Crawford is an employee of Centurion of Idaho LLC as the Health Services Administrator since on or about November 2022. His duties and responsibilities included general oversight of the administration of medical and dental care at ISCC, serving as the point-person for the delivery of unimpeded access to required healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well at ISCC. Along with coordinating and scheduling of staff and specialists for treatment of plaintiff's requests for treatment as set forth more fully herein. His first name is unknown at this time and will be supplemented upon knowledge of it.

23. Defendant Kasey Holm is an employee of Centurion of Idaho LLC who is the Director of Nursing at ISCC. Her duties include facilitating nursing care in accordance with the Idaho Nurse Practice Act, as well as NCCHC standards and standards established by IDOC and its contract with Centurion; facilitating, overseeing nursing staff, and to observe staff to ensure they are meeting performance expectations as set forth in NCCHC Standards and IDOC's contract with Centurion. She is also responsible for the oversight and scheduling of medical appointments with on-site providers as well as complex patient issues to insure appropriate care with outside local specialists so as to ensure delivery of unimpeded access to required healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well at ISCC.

24. Defendants Centurion Inc. and Centurion of Idaho LLC, Boyer, Crawford, and Holm do not have qualified immunity for the reasons set forth more fully herein, and are sued in their individual and official capacities for injunctive and declaratory relief.

25. Defendant Rada Sadacharan, MD, MPH, is a licensed primary care physician, as the Regional Medical Director ("RMD") for Centurion of Idaho LLC at all IDOC facilities. She received her medical degree from Thomas Jefferson University, Jefferson School of Medicine and maintains board certification in family medicine. Her duties and responsibilities include supervision of all on-site providers at IDOC facilities, conducting exams and prescribing treatment in accordance with the continuity of care at community based standards, and approving all off-site medical appointments for non-emergency specialty care as necessary with the local community for medical care if they are not able to provide it on-site, and ensuring that the off-site ordered care is followed upon the plaintiffs return from the off-site non-emergency appointment or emergency room treatment.

26. Defendant Sadacharan as RMD also is part of Defendant Centurion Inc. Utilization Management Program and Process. She oversees the UM Program at the local level in collaboration with Daren Isaak, Vice President of Utilization Management at Defendant Centurion Inc. corporate office that makes the final decision as to the local off-site treating MD who prescribed the continuity of care at community based standards in Boise Idaho.

27. Defendant Sadacharan does not have qualified immunity for the reasons set forth more fully herein and is sued in her individual and official capacity for injunctive and declaratory relief.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

28. Defendant Murray Young, MD, is the successor in office to Defendant Sadacharan as the Regional Medical Director. Young earned his Surgery and Medical Degree from the Universiadad Autonoma De Guadalajara in June 2000. He completed a year-long membership, in Family Medicine. From 2009 to 2013, he was the Site Medical Director at the Wyoming Department of Corrections. From 2013 until July of 2016, he was the Reginal Medical Director for defendant Corizon Health, which contracted with the State of Idaho to provide health care to inmates incarcerated by the IDOC. He left the position as RMD in July 2016 to take another position with defendant Corizon. Young is familiar with the applicable standard of healthcare in Idaho prison facilities, as well as the treatment and care Plaintiffs complaints of shoulder and knee pain when he was in the employ of defendant Corizon.

29. Defendant Young on or about September 2022 assumed as successor in office of Defendant Sadacharan as RMD for Centurion Inc, and is also part of Defendant Centurion Inc. Utilization Management Program and Process. He oversees the UM Program at the local level in collaboration with Daren Isaak, Vice President of Utilization Management at Defendant Centurion Inc. corporate office that makes the final decision as to the local off-site treating MD who prescribed the continuity of care at community based standards in Boise Idaho.

30. Defendant Young is familiar with Defendants orthopedic injuries and treatment history from previous encounters in March 2016 when in the employment of Corizon as the RMD with other Corzion providers consulting him as to course of treatment for his bilateral shoulder pain, with greater pain in the left shoulder, and off-site ordered treatments, to include but not limited to pain management treatment plaintiff is currently receiving from Defendant Isaacs who is the ISCC site Medical Doctor as set forth more fully below.

31. Defendant Young does not have qualified immunity for the reasons set forth more fully herein and is sued in his individual and official capacity for injunctive and declaratory relief.

32. Defendant Brandon G. Isaacs, is a licensed Osteopath in good standing with the Idaho State Board of Medicine who is required to provide the continuity of care at community based standards as set forth in Idaho Ann. Code 6-1012, and federal standards regarding plaintiffs access to care for pain management and continuing treatment of his orthopedic injuries as described more fully below.

33. Defendant Isaacs is the site medical doctor for ISCC who supervises the medical staff to include other Doctors, Nurse Practitioners, (ARNP, NP-C), and Physician Assistant's (PAs) Issaacs conducted exams and prescribed narcotic pain management that was contrary to the community based standard of care that plaintiff was previously receiving, and also failed to provide proper Access to Care for plaintiffs request for follow-up care on his orthopedic injuries as described more fully below.

34. Defendant Isaacs is sued in his individual and official capacity for injunctive and declaratory relief.

D.  **FACTUAL ALLEGATIONS**

1. Plaintiff on February 25, 2005 fell down an elevator shaft. As a result he suffered numerous injuries to include: a) broken left 4 & 5 metacarpal; b) left knee ACL tear and lateral meniscus

tear, plus grade 2 MCL Sprain; c) to his back, L4 and L5; d) torn rotator cuffs in both shoulders. Plaintiff was treated for these injuries in Mesa AZ. He then moved to Boise, Idaho, and continued his treatment for these injuries with Dr. Erik Heggland MD at Saint Alphonsus Regional Medical Center in Boise Idaho.

2. Plaintiff had surgery on his shoulders and left knee due to the injuries he suffered from falling down the elevator shaft by Dr. Jeffery Hessing in Boise Idaho. As part of his aftercare he was prescribed Tylenol w/codeine ("T-4's") (325 mg. of Tylenol and 30 mg. of codeine) for pain management due to the fact no other type of narcotic pain pill or regular Tylenol did not work, and Plaintiff *is allergic* to Aspirin, Penicillin and all Caine-related Anesthesia including Vancomycin, Aspirin, Lidocaine, Marcaine [bupivacaine], and Novocain due to a very rare disease of "Malignant Hyperthermia," with the most recent occurrence on January 2006.

## August 2017 to September 30, 2021

### i) Corizon's Deliberate Indifferent to Pain Management

3. Defendant Seigert as the Health Authority for the IDOC was part of the management team for the IDOC in seeking an expert contractor to provide healthcare, mental health, dental, vision, specialty care, and pharmaceutical services for prisoner population in IDOC facilities which required defendant Corizon to meet the serious healthcare needs of prisoners in accordance with applicable state and federal laws.

4. Defendant Siegert in seeking the services of healthcare for IDOC prisoners in where she required that Corizon Inc. and Corizon LLC were to have Access to Healthcare Services as set forth in IDOC SOP 401.06.03.001 and National Commission on Correctional Healthcare (NCCHC) Access to Care standard P-A-01.

5. Defendant Siegert in seeking the services of healthcare for IDOC prisoners in where she required that Corizon Inc. and Corizon LLC were to have Non-Emergency Health Requests and Services would be adhered to as set forth in IDOC SOP 401.06.03.037, and National Commission on Correctional Healthcare (NCCHC) Non-emergency Healthcare Requests and Services standard P-D-07.

6. Defendants Corizon in its response to IDOCs "Request for Proposal" (RFP) for "Healthcare Services for Adult Offenders" stated they have included an "implementation of a quality healthcare plan with clear objectives, policies, and procedures, that meet and often exceed the requirements listed in the standards guidelines of the National Commission on Correctional Health Care (NCCHC), the IDOC's Standard Operating Procedures (SOPs), and all State and Federal regulations."

7. Defendants Corizon further stated- "Corizon offers a comprehensive healthcare program which is in compliance with state and Federal laws."

8. Defendants Bid Proposal for RFP 02540 dated September 30, 2013 in respects to "Section 4.5 (ME) Healthcare Responsibilities of the Offeror, General Overview" they stated they have "an Infrastructure of clinical service capabilities to ensure our field staff has access to the resources

COMPLAINT AND DEMAND FOR JURY TRIAL- 7

they need to effectively implement our correctional healthcare programs. We assess to the correctional health care industry on a continual basis to ensure that the programs we provide our clients meet and exceed the ever-increasing standards of the industry. Examples of proven innovative concepts that we are currently providing for the IDOC include: Innovative clinical and administrative systems, all designed to enhance the level of services provided onsite, improve quality, and reduce costs, including the following: - Persistent Pain program for management of offenders with chronic pan". Defendant Corizon Inc. and Corizon LLC Corizon Inc. agreed to meet and comply with the specifications as required in respects to providing Access to Care as Defendant Siegert required them to.

9. Defendants Corizon agreed to meet and comply with the specifications as required in respects to providing Non-Emergency Healthcare Requests and Services as Defendant Siegert required them to by stating in the Response to RFP dated Sept. 30, 2013- "Corizon offers a comprehensive healthcare program which is in compliance with state and Federal laws.", and agreed to meet the standards set forth within IDOC's SOP's regarding the delivery of healthcare to include but not limited to Access to Care, Non-Emergency Healthcare Services. These IDOC SOPs were developed based upon the NCCHC standards and list the specific NCCHC Standard within each SOP regarding the delivery of healthcare in the IDOC.
10. Plaintiff arrived into IDOC custody in August 6, 2015.
11. Plaintiff informed IDOC and defendant Corizon of his previous medical injuries in the "Medical History Questionnaire completed on August 7, 2015, and current prescribed pain management while being processed in the Receiving Diagnostic Unit ("RDU").
12. Plaintiffs pain management of two (2) T-4's three (3) times a day was discontinued with no explanation given.
13. Plaintiff had to resort to submitting over 100 Health Services Request ("HSR") forms and submitting several Concern Forms followed by several Grievance/Appeal forms on the matter.
14. Defendant Corizon medical providers from August 2015 to June 2017 knowingly attempted to place plaintiff on NSAID's when he is allergic them. They also attempted to provide corticosteroid shot, Kenalog, when it request a numbing agent such as Lanicain or Novocain mixed with it when administered knowing that plaintiff is allergic to all Caine-related Anesthesia including Vancomycin, Aspirin, Lidocaine, Marcaine [bupivacaine], and Novocain due to a very rare disease of Malignant Hyperthermia, with the most recent occurrence on January 2006 at St. Al's in Boise Idaho.
15. Plaintiff on or about June 21, 2017 while at ISCI had an appointment with P.A. William Rogers who read plaintiffs medical file in detail in relation to his orthopedic injuries and recognized his allergies. P.A. As a result of this appoint Rogers placed him in the persistent pain management program and prescribed narcotic pain management of 2 T-4's 3 times a day for plaintiffs chronic pain.
16. P.A. Rogers in the June 2017 appointment explained to Plaintiff he had gone through his medical file regarding his orthopedic injuries and prior treatment he was provided prior to

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

incarceration and explained to Plaintiff he should be on something stronger than T-4's but was limited to only being allowed to administer T-4's for his persistent pain management due to Defendant Corizon policy, practice and custom.

17. Plaintiff remained on his persistent pain management of 2 T-4's 3 times a day until he was transferred to ISCC on or about Octoer 19, 2017, where ISCC providers discontinued his persistent pain management of 2 T-4's 3 times a day.
18. Plaintiff then had to go through another series of HSR's Concern Forms, and Grievance/Appeal's in order to get the persistent pain management of 2 T-4's 3 times a day reinstated in early 2018 by Dr. John Migilori. Then they would only do it sporadically for 1-2 weeks or 30 days and then discontinue it again.
19. Plaintiff was transferred from ISCC to IMSI on or about September 2018, when he had an appointment with P.A. Daniel Delwo who referred his case to Dr. Abby M. Luensmann, MD, who reviewed previous standard of care and reinstated the persistent pain management program of 2 T-4's 3 times a day.
20. Plaintiff then was transferred back to ISCC early 2021 where his persistent paint management of 2 T-4's 3 times a day remained in effect with Corizon offering services until the end of their contract on Sept. 30, 2021 due to Centurion taking over.

**October 1, 2021 to present day with Centurion**

21. Defendant Centurion Health Inc. announced on August 30, 2021 was awarded a contract with the State of Idaho, Idaho Department of Correction, to provide medical and mental health care services for the IDOC for five (5) years with an option of a 10 years of renewal options. Centurion October 1, 2021 assumed full control of offering medical and mental health services within IDOC facility.
22. In the Request for Proposal ("RFP") for Bids for Medical and Mental Health Services (RFP No. 20210739), Defendant Siegert as representative for IDOC set forth regarding "3.1.2 General Healthcare-related Information" the Contractor must provide it within NCCHC standards.
23. Defendant Siegert also in the RFP "**3.4** Access to Medical Care" would have to be in accordance with IDOC SOP 401.06.03.001, and also conform to NCCHC Access to Care standard P-A-01.
24. Defendant Siegert also in the RFP IDOC SOP 401.06.03.037, and National Commission on Correctional Healthcare (NCCHC) Non-emergency Healthcare Requests and Services standard P-D-07 be adhered to.
25. Defendant Siegert was to ensure continuity of care be met within the IDOC facilities as well as collaborative relationships with community programs and providers to ensure continuity of care within IDOC facilities and beyond can be met.
26. Defendants' Centurion Inc. and Centurion of Idaho LLC in their "Medical and Mental Health Services" Bid Submission dated January 27, 2021 for the Request for Proposal ("RFP") RFP 20210739 stated they "support [ ] the right of all residents to access health care that is medically

necessary, human, and provided in a professional manner, as guaranteed by the Eighth Amendment of the United States Constitution, and that set forth within the U.S. Supreme Court's holdings of *Estelle v. Gamble*, 429 U.S. 97 (1976), and also agreed to meet the continuity of care, consultation and collaboration standard required by Defendant Siegert under "Access to Care" portion of their bid proposal to the RFP.

27. Defendants Centurion in its Response to RFP No. 20210739, which is now considered the Contract for Medical and Mental Health Services, stated in regards to Access to Care, Centurion will ensure consistent and timely access to care and quality of healthcare services received for all IDOC residents regardless of facility or housing placement. "Centurion recognizes that unimpeded access to healthcare services for IDOC residents is a constitutional right, IDOC policy requirement, and an essential standard expectation for the NCCHC and ACA, by ensuring equity in healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well."

28. Defendants Centurion also stated they "will provide IDOC residents with unimpeded access to care that meets the full scope of their healthcare needs through the provision of qualified and trained healthcare staff, with support from strong clinical leadership."

29. Defendants Centurion also committed to being appropriately staffed by having a "plan for providing unimpeded access to all required healthcare that meets IDOC residents' necessary medical, dental, and behavioral health needs includes, but not limited to, the following practices and support mechanisms: Recruiting and retaining appropriately licensed, credentialed and otherwise qualified healthcare and support staff. Ongoing training of healthcare and support staff on relevant IDOC policies, correctional contracted healthcare requirements, NCCHC and ACA standards, Centurion's evidenced-based clinical guidelines, best-practices community standards, and escalation policy.

30. Defendants Centurion also agreed to "establish and maintain collaborative relationships with IDOC staff as well as community programs and providers to facilitate continuity of care for residents. Providing excellent healthcare during incarceration supports the patient's overall health and wellbeing. Centurion recognizes the importance of continuity of care when patients transfer internally between IDOC facilities."

31. Lastly, Defendants Centurion in respects to providing the continuity of care in respects to Access to Care stated- "Our commitment to supporting resident access to care will benefit the IDOC by ensuring equity in healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions be treating the patient early, proactively, and well."

### ii) Centurions Deliberate Indifference to Pain Management

32. As previously mentioned above, Plaintiffs persistent pain management was in effect while Defendants Corizon provided medical services up to Sept. 30, 2021.
33. Plaintiffs T-4 prescription was renewed in Sept. 2021 for 90-days, expiring in Dec. 2021.

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

34. Plaintiff submitted a HSR in Dec. 2021 to get his renewal of his T-4's for another 3 months when he received a "Medical Information Update/Response" form dated 1/25/2022 stating- "HSR for renewing narc's for chronic pain. Narc taper imitated per RMD (Regional Medical Director) No more narcotics for chronic pain allowed in prison here. APAP/ IBUP; Rotated is the tx".
35. Plaintiff learned the RMD was defendant Sadacharan who chose to stop plaintiffs prescription for Tylenol w/codeine (T-4's), and ignored his drug allergies as she had ordered ibuprofen and is contrary to the continuity of care at community based standards was prescribed due to his drug allergies.
36. Plaintiff submitted multiple HSR's requesting his Tylenol w/codeine (T-4's) pain management be reinstated due to the fact it was the standard of care at community based standards from off-site providers in Boise, and his drug allergies. Plaintiff followed this up with a Concern Form to defendant Boyer and was informed he was scheduled to see the provider on the matter.
37. Plaintiff was seen by a provider Barsh on 2/10/22 informing him that the use of narcotics was not the proper pain management for his injury. This was contrary to plaintiff being informed he would see Defendant Sadacharan who is a Medical Doctor and had cancelled the Tylenol w/codeine (T-4's).
38. Defendants Centurion chose to issue Plaintiff several cards of regular Tylenol 325 mg. tabs which he had not requested as they do not work for his persistent pain as has been demonstrated previously.
39. Plaintiff due to the discontinuing of the T-4's began to experience extreme pain due the lack of properly prescribed pain management.
40. Plaintiff then had to begin *again* had to submit a series of Concern Form(s) HSR's in an attempt to get his T-4 pain management reinstated. One Concern Form was sent to Defendant Boyer, ISCC HSA, along with HSR C 0040580 on 2/15/22 requesting the reinstatement of the 2 T-4's 3 times a day as regular Tylenol will not help with the severe pain he was suffering from.
41. Plaintiff then submitted a total of twelve (12) HSRs in a 62 day span, Jan. 26, 2022 - March 28, 2022, of requesting via HSRs to get treatment until Plaintiff was finally informed he would be seen by Defendant Sadacharan, the Centurion RMD.
42. Centurion defendants have failed to meet their contractual obligations in where they stated-:a) they will "ensure consistent and timely access to care and quality of healthcare services received for all IDOC residents regardless of facility or housing placement."; b) Centurion recognizes that unimpeded access to health care services for IDOC residents is a constitutional right, IDOC policy requirement, and essential national standard expectation for the NCCHC and ACA.; c) their commitment to supporting residents access to care will benefit the IDOC by ensuring equity in healthcare commensurate with community standards, reducing frivolous complaints, grievances, litigations, and avoiding unnecessary complications in resident conditions by treating the patient early, proactively, and well.; d) Centurion will provide IDOC residents with unimpeded access to care that meets the full scope of their healthcare needs through the provision of qualified and trained healthcare staff, with support from strong clinical

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

leadership.

43. Subsequently, Plaintiff received a "Medical Information Update/Response" informing him he had discussed pain management with NPC Barsh and would be scheduled to see defendant Sadacharan. A Concern Form on Feb. 9, 2022 requesting to see a Doctor to get the T-4's reinstated with a reply on 2-14-22 stating he was scheduled to see the provider as well.

44. Plaintiff filed a Grievance on the matter. Grievance No. IC 220000253. Plaintiff's solution was that his pain medications that Defendant Sadacharan had discontinued be reinstated, along with allowing him to speak with a specialist in orthopedic care opposed to those he has seen.

45. Defendant Holm responded as the Level 1 responder, and specifically informed plaintiff that he had refused treatment of total shoulder reversal surgery. Holm also informed Plaintiff he was scheduled to see a provider about his pain management. Defendant Boyer as the Level 2 responder to the grievance also stated he would continue to receive 325 mg. tabs of Tylenol for his pain.

46. Defendant Holm ignored the fact it was refused due to previous Dr. Schwartsman's recommendation that is in his medical file which Dr. Curtin in a 2/1/2022 off-site appointment had agreed to.

47. Plaintiff on 3/8/2022 filed a Grievance/Appeal to defendant Siegert in where he addressed several inaccuracies: 1) the reason for refusal of the shoulder reversal surgery was due to being too young for it as was noted in his medical file; 2) he was seen by a nurse on 2/10/22 not a medical doctor as he was informed he would be seeing regarding pain management and reinstatement of his T-4's; 3) he had been attempting to see a Medical Doctor since Dec. 16, 2021 and haven't seen one yet at the facility regarding the reinstatement of his T-4's as of March 8, 2022, 4 months; 4) Dr. Curtin, an off-site orthopedical specialist at St. Luke's Sports Medicine, on 2/1/22 had inquired what Plaintiff had been taking for pain management, which plaintiff explained the only thing that worked for him prior to and during his incarceration was 2 T-4's 3 times a day, which Dr. Curtin ordered to continue, and was not followed by Centurion defendants.

48. Defendant Siegert on 4/26/2022 responded as the appellate authority Modifying the Grievance. She and informed Plaintiff Defendant Holm's statement regarding "not being able to use narcotic medication at ISCC is incorrect. Pain medication is prescribed by a medical provider based on their evaluation of a patient. Pain medication can be prescribed at any facility upon the order of a medical provider. A review of your medical record shows you on 4/19 were seen by NP LaRive and pain medication was ordered."

49. Plaintiffs T-4's were reinstated, but was only being given 1 T-4 for the morning and noon dosage, and 2 T-4's for the evening dosage.

50. Centurion Defendants failed to reinstate the T-4's after Defendant Siegert had modified the grievance, and is not conforming with the continuity of care at community based standards as Dr. Curtin, off-site orthopedic specialist, and ordered he continue the 2 T'4's 3 times a day.

51. Due to the reduction in dosage for Plaintiff's pain management, he now continually in pain, along with the sporadic pill call times they are delivered.

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

52. Plaintiff then began to send several Concern Forms and HSRs requesting the T-4's be increased back to previously prior to Defendant Sadacharan's actions in discontinuing them. Specifically, from June 7, 2022 to August 10, 2022 44 HSRs , 20 HSRs regarding pain management and shoulders; 5 HSRs regarding neck; 5 HSRs regarding his back; 5 HSRs regarding knees; and 14 HSRs regarding ankles, seeking follow-up treatment as well as an increase in the T-4's to back to 2 T-4's 3 times a day as the reduced dosage contrary to what was previously ordered was not working.
53. Plaintiff was informed all 44 HSRs were treated as issues for pain management, opposed to the fact Plaintiff had specifically requested an appointment with a **Doctor** as he was told would take place in January 2022 and had yet taken place.
54. Plaintiffs medical records show from previous off-site consultations with orthopedic specialists, Dr. Schwartsman and Dr. Alejandro A. Homaechearria from St. Lukes Sports Medicine Clinic, that it was recommended he have a MRI done on his knee so as to see the extent of the injury and if surgery could repair it. Defendants have yet to have this appointment scheduled for his left knee.
55. Plaintiff on August 26, 2022, *over 4 months after being told in Jan. 2022 he was scheduled to see the RMD and 76 days after the June 7, 2022 HSR had been submitted* had an appointment with Defendant, Dr. Isaacs.
56. Defendant Iassacs did a review the entire medical file regarding Plaintiffs orthopedic injuries, treatment and pain management. From Dr. Schwartsman on Plaintiffs knees and informed Plaintiff he was going to order a CT scan be done on his rib injuries he suffered from in early 2022, followed by having his other issues addressed.
57. Defendant Isaacs addressed Plaintiffs pain management issues he had raised since his T-4 dosage had been reduced from 2 T-4's 3 times a day, and explained he had reviewed the medical file concerning this as well and agreed due to having more metal than bone in his orthopedic areas it was justified to place him on the T-4's as was previously being done, but he could not increase the morning and noon dosage to 2 T-4's as previously was being done prior to Jan. 2022 until he conferred with the new Regional Medical Director, due to Defendant Sadacharan having set forth a new policy denying any type of narcotic pain medication.
58. Plaintiff learned on Sept. 22, 2022, that Defendant Murray Young has been appointed as Defendants Centurion Regional Medical Director, and that he is attempting to stop all narcotic pain management as he has previously done when in the employ of Corizon defendants at ISCI approximately 2012-2015, in where *Balla* Meeting Minutes will prove his attempts to do this then.
59. Plaintiff on 9/23/22, submitted HSR C 00521197 along with a Concern Form dated 9/23/22 addressed to Defendant Isaacs. The HSR requested "Since "RMD Young" is now here, I would like to et my T-4's for pain management placed back to 2 T-4's 3 X a day, as previously prescribed for me for years while in IDOC's custody, and as previously prescribed to me prior to my incarceration." The Concern Form stated- As previously discussed on 8/23/22 during my pain management appointment, you stated that once we got a new (RMD) you'd get my (T-

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

4's for pain management) changed back (2 T-4's 3 X a day) know that Dr. Murray Young is here as our (RMD) I'd like it changed back to to what it was prior to Dec. 2021 to 2 T-4's 3 X a day. I have submitted an HSR - C003521197 to have you change my dosage. "

60. Based upon the foregoing Centurion Defendants have lacked any strong clinical leadership ensuring that Plaintiff was scheduled within 14-days as NCCHC Access to Care standard P-A-07, as Defendant Siegert has testified previously before this district court that "HSRs describing a clinical symptom, NCCHC standard P-D-07 requires that a face-to-face encounter will occur within 24 hours or 72 hours on the weekends. ... [T]he SOP [401.06.03.001] requires the inmate must be seen by a qualified health professional within 24 hours, or 72 hours on weekends, for evaluation and treatment. ... Finally, I know that when a inmate has been referred to a provider, the inmate must be seen within 14 days of the sick call assessment when (i) indicated by protocol, (ii) the inmate requires higher level of evaluation and/or care, (iii) the nursing assessment was deferred, or (iv) two or more recent contacts were made for the same health complaint." (*See: Balla v. Idaho St. Bd. of Corr.*, 1:81-cv-1165-BLW (Dkt. 1257-53 Aff. of R. Siegert, pp.9-10, ¶ 23.d.)

61. Based upon the foregoing Access to Care and Non-emergency Health Care Requests standards Centurion Defendants has failed to follow them due to plaintiff having waited over 4 months to get T-4's reinstated to a lesser dosage than before, and 62 days before Centurion defendants said plaintiff would be seen by a provider. All in violation of NCCHC Access to Care standard P-A-01 an Non-emergency Healthcare Requests and Services standard P-D-07 and IDOC SOPs regarding these 2 NCCHC standards.

62. Corizon and Centurion Defendants, and Defendant Siegert, described above were deliberately indifferent to plaintiffs' serious medical needs in seeking treatment for his pain management which has resulted in the unnecessary and wonton infliction of pain, all in violation of the 8th and 14th Amendment of the Constitution of the United States.

### iii) Corizon's Deliberate Indifference Providing Shoulder Treatment

63. Plaintiff in December 2020, while being housed in the ISCI Unit 8 Restrictive Housing Unit was subjected to excessive use of force by six (6) Correctional Staff members with Defendant Ploss present.

64. After the six officers had entered the cell with Defendant Phloss present, and having verified plaintiff was not in any type of danger, had asked Defendant Ploss if he wanted to examine him. Ploss stated "No he's breathing!" and left Unit 8.

65. After Shift Commander Correctional Lt. Corey Seely arrived and spoke to plaintiff, he explained that defendant Poss refused to examine him. Plaintiff also spoke to some of the six officers who were involved in the excessive force incident about getting examined for his injuries.

66. The CO came back and informed Plaintiff that Defendant Ploss had stated- "Tell him that I have already examined him and that there was nothing wrong with him and to put in an HSR for his pain!"

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

67. Plaintiff the following morning attempted to get treatment from Pill Call Nurse LaLescu ID #E251 who noticed Plaintiffs swollen hands, arms and shoulders and was going to provide Plaintiff an ace wrap for his right shoulder.
68. Nurse LaLescu came back at noon pill call and informed plaintiff that he was not allowed to give him a "sling" but would attempt to provide a Ace Wrap and left. He never returned.
69. Plaintiff submitted 3 HSRs, 1531973 on 12/25/20, 1531974 on 12/26/20, 1527877 on 1/3/2021, and 1500710 on 1/14/21, seeking treatment for his right shoulder.
70. Plaintiff was seen on 2/1/2022 by Dr. Michael J. Curtin, MD on his right shoulder at St. Luke's Sports Medicine who performed a MRI on the right shoulder. The 2013 MRI when originally injured only showed a partial tear to the supraspinatus and infraspinatus, and this new MRI revealed the "supraspinatus and infraspinatus *are completely torn and medially retracted*",.
71. Plaintiff has demonstrated the injuries suffered due to the excessive force incident that took place on 12/24/20 as there were no other traumatic injuries to right shoulder after the 12/24/20 excessive force incident.
72. Dr. Curtin discussed that a capsular reconstruction on the right shoulder as a third procedure be done. Plaintiff informed Dr. Curtin that Dr. Schwartzman had previously recommended it in 2017 as well after the left shoulder was done, but due to Defendants Haggard having ignored Schwartzman's previous recommendations when it was ripe to do the surgery it was now too late to do both, which has resulted in Plaintiffs further significant injury.
73. Defendants Corizon, McMillan, Brewer and Ploss failed to adhere and meet the requirements for Access to Care be delivered in accordance with IDOC SOPs 401.06.03.001 Access to Care, NCCHC Access to Care Standard P-A-01, and SOP 401.06.03.037 Non-emergency Health Care Requests and Services, NCCHC Nonemergency Health Care Requests and Services Standard P-D-07, by seeing plaintiff within 24 hours after submitting a HSR during the week, 72 hours on the weekend, or 14 days of the sick call assessment when (i) indicated by protocol, (ii) the inmate requires higher level of evaluation and/or care, (iii) the nursing assessment was deferred, or (iv) two or more recent contacts were made for the same health complaint." (***See: Balla v. Idaho St. Bd. of Corr.,*** **1:81-cv-1165-BLW (Dkt. 1257-53, Aff. of R. Siegert, pp.9-10, ¶ 23.d**.
74. Plaintiff fully exhausted this issue with Corizon defendants and Siegert and was denied by Defendant McMillian and Siegert.
75. Corizon Defendants and Siegert failure to treat Plaintiffs condition resulted in further significant injury and the unnecessary and wanton infliction of pain, all in violation of the 8th and 14th Amendment of the Constitution of the United States.

### iv) Centurions Inadequate Staffing Regarding Access to Care for Pill Call

76. Plaintiff has already established above Defendants Centurion, Boyer, Crawford, Holm, Sadacharan and Isaacs failure to meet this standard for provider appointments.
77. Prior to Centurion having assumed control of all medical and mental health services at ISCC, Defendant Corizon had implemented well established pill call times of approximately 0630,

COMPLAINT AND DEMAND FOR JURY TRIAL - 15

1200 and 1630 with the use of a minimum 3 to a maximum of 8 staff doing it prior to leaving on Sept. 30, 2021.

78. Centurion after October 1, 2021 has had an ongoing problem with not meeting the well established pill call times of 0630, 1200, and 1630 for plaintiff to receive his T-4's for persistent pain management.

79. Plaintiff discovered through his own investigation in regarding pill call being late is due to Defendant Centurion failing to meet their requirements of staffing ISCC facility. All in violation of NCCHC Access to Care standard P-A-01.

80. NCCHC Access to Care standard P-A-01 states within the "Discussion" of this standard: "Having an understaffed, underfunded, or poorly organized system with the result that it is not able to deliver appropriate and timely care for patients' serious health needs."

81. This would include standardized established pill call times during the day at ISCC with the proper amount of staff to do it.

82. Defendant Siegert has agreed to Plaintiffs Concern/Grievance in this matter regarding the pill call times mentioned above are to be met by Centurion, and would be monitoring the matter.

83. Despite said monitoring of this issue, pill call times are still not on time, or even close for that matter, and has caused Plaintiff the unnecessary and wanton infliction of pain due to defendant's response to the need was deliberately indifferent as they have reduced the dosage of his T-4's to 1 in morning, 1 at noon and 2 in the evening.

84. Plaintiff after receiving his narcotic medication in the evening at the normal time of 1630 has waited upwards of 17 hours to receive his morning dose of 1 T-4, resulting him being in extreme pain due to the delay in the delivery of a reduced T-4 dosage.

85. It is also common knowledge that after use of narcotic pain management for an extended period of time one begins to suffer from withdrawals due to untimely dosages such as what defendant Centurion is causing plaintiff to continually suffer from now.

86. Centurion Defendants agreed to meet or exceed the Access to Care standards P-A-01 in their RFP Bid Proposal at pp.314-32, and to have the excuse of being understaffed is not acceptable due to their assurances they would "*meet or exceed*" the delivery of healthcare within the IDOC facilities, such as ISCC.

87. More recently in the months of October through November 2022, despite Defendant Siergert's response in the previous Grievance Appeal, Defendants Centurion have still not met staffing levels in order to comply with Access to Care standard P-A-01 in conducting pill call.

88. In one instance, Nov. 6, 2022, the male medical staff member brought evening pill call at approximately 1:00 am. When doing so he specifically informed Plaintiff "it's not my job, when I get done with what I am to do on my shift I will then do pill call". Again the same medical staff member did this on Nov. 28, 2022 when delivering pill call at 10:11 pm. Upon information and belief this staff member was terminated for these actions on or about November 29, 2022..

89. There are several instances that Plaintiff has documented in a Pill Call Log indicating inadequate staffing that will be produced in discovery showing pill call times are not being

met.

90. Centurion Defendants, Boyer, Crawford and Holm have failed to ensure pill call times are adhered to unless there is an emergency only, then they are only allowed 30 min. if so.

91. Plaintiff has personally observed when pill call is done that it is being done by Centurion Medical Staff who are assigned to other positions in Medical such as the Lab Technician, Scheduler, along with other medical personnel whose job is in other areas other than doing pill call. Other instances include temporary workers they have hired through a Temp Agency's to work at the facility which has resulted in a high turnover rate of medical staff. Thereby constantly being understaffed for the number of inmates to be seen in medical and pill call dosages to be delivered throughout the facility Housing Units due to COVID-19 restrictions IDOC has still in place.

92. Plaintiff having exhausted this issue under IDOC's Grievance process where Defendant Siegert modified it, additionally submitted a Concern Form to Siegert on November 25, 2022 regarding pill-call times still not being adhered to, and the direct comments from the one Centurion employees who said he would do his job first before he did pill call. Siegert replied that this conduct "was unacceptable" along with IDOC having met with Centurion on Nov. 25th, 2022 regarding the issue of pill call times not being met.

93. As demonstrated above, Defendants Centurion, Boyer, Crawford, and Holm have failed to adequately staff ISCC Medical so pill call can be on time, which is been deliberately indifferent to plaintiffs serious medical needs and in violation of NCCHC Access to Care standard P-A-01.

E. **CLAIMS FOR RELIEF**

Plaintiff re-alleges and incorporates by reference paragraphs C. 1 - 34, and D. 1 - 92.

### CLAIM 1:
### DEPRIVATION OF U.S. CONST. AMEND. VIII AND
### XIV, RIGHT TO BE FREE FROM INFLICUTION OF CRUEL
### AND UNSUAL PUNISHMENT AND PROCEDURAL DUE PROCESS
### FOR WHICH 42 U.S.C. § 1983 PROVISION REMEDIES

Defendants Corizon Health Inc., Corizon LLC, Haggard, Menard, McMillian, Brewer, Ploss, have enacted and/or pursued or acquiesced in the policies, practices and customs, set forth more fully above regarding the failure to provide adequate access to medical care that has caused Plaintiff to suffer the unnecessary and wonton infliction of pain. These Defendants' refusal to adhere to the standards of care they were required to provide plaintiff where the response to the need was deliberately indifferent has resulted in a violation of his rights secured to him by the 8th Amendment of the U.S. Constitution. Plaintiff seeks compensatory and punitive damages against them jointly and severally pursuant 42 U.S.C. § 1983.

## CLAIM 2:
## DEPRIVATION OF U.S. CONST. AMEND. VIII AND XIV, RIGHT TO BE FREE FROM INFLICUTION OF CRUEL AND UNSUAL PUNISHMENT AND PROCEDURAL DUE PROCESS FOR WHICH 42 U.S.C. § 1983 PROVISION REMEDIES

Defendants Centurion Inc, Centurion of Idaho LLC, Sandacharan, Murray, Isaacs, Boyer, Crawford, and Holm, have enacted and/or pursued or acquiesced in the policies, practices and customs, set forth more fully above regarding the failure to provide adequate access to medical care that has caused Plaintiff to suffer the unnecessary and wonton infliction of pain. These Defendants' refusal to adhere to the standards of care they were required to provide plaintiff in where the response to the need is deliberately indifferent has resulted in a violation of his rights secured to him by the 8th of the U.S. Constitution. Plaintiff seeks compensatory and punitive damages against them jointly and severally pursuant 42 U.S.C. § 1983.

## CLAIM 3:
## DEPRIVATION OF U.S. CONST. AMEND. VIII RIGHT TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVISION REMEDIES

Defendant Siegert has enacted and/or pursued or acquiesced in the policies, practices and customs, set forth more fully above regarding the failure to ensure Plaintiff was provided adequate access to medical care that has caused Plaintiff to suffer the unnecessary and wonton infliction of pain. Siegert's refusal to ensure the standards of care she was required to have Corizon Defendants, Centurion Defendants, and Defendants Haggard, Menard, McMillian, Brewer, Ploss, Sandacharan, Murray, Isaacs, Boyer, Crawford and Holm to respond to Plaintiffs serious medical needs is deliberately indifferent and has resulted in a violation of his rights secured to him by the 8th Amendment of the U.S. Constitution. Plaintiff seeks compensatory and punitive damages against Siegert jointly and severally pursuant 42 U.S.C. § 1983.

**F.  EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff has fully exhausted his administrative remedies as required by IDOC SOP 316.02.01.001, with the Concern and Grievance/Appeal process.

**G.  QUALIFIED AND SOVEREIGN IMMUNITY**

The defendant's identified herein plaintiff has stated are not entitled to qualified immunity is due to previous rulings of this Court, the Circuit Court's and the United States Supreme Court, as defendants were notified by plaintiff of the constitutional violations complained of herein, failed to remedy them, and were aware of their own explicit clearly established Policies, SOPs, NCCHC Standards, Contracts, state and federal law regarding the claimed violations set forth more fully above. Moreover, none of the defendants are entitled to sovereign immunity since they are being sued in their official capacity so far as injunctive relief is concerned.

**H.  PREVIOUS OR PENDING LAWSUITS**

Plaintiff has pursued treatment of his shoulders in a previous lawsuit. *See Moore v. Corizon Health Servs.* **Case No. 1;16-cv-229-BLW, summary judgment granted 2018 U.S. Dist. LEXIS 168507 Sept. 27, 2018 (D.Idaho), ;** *aff'd,* **788 Fed. Appx. 503, (9th Cir. Dec. 17, 2019).** New

facts and evidence have come to plaintiffs' knowledge and possession demonstrating that failure to treat his condition has resulted in further significant permanent injury and the unnecessary and wanton infliction of pain due to Defendants' response to the need was deliberately indifferent.

Plaintiff has another Section 1983 that was submitted for filing at the same time as this one regarding an 8th Amendment violation of excessive force that resulted in permanent medical injuries. Plaintiff has addressed the medical injuries in this complaint opposed to the excessive force case. *See Moore v. Josh Tewalt., et al.* 1:23-cv-____-____ (D.Idaho)

**I. REQUEST FOR APPOINTMENT OF COUNSEL**

Plaintiff doesn't request appointment of counsel, but reserves the right to request one later.

**J. REQUESTED RELIEF**

Plaintiff respectfully requests this Court to:

1. **GRANT** a declaration in favor of Plaintiff declaring the Defendants actions described above is in violation of the 8th Amendment of the Constitution of the United States.

2. **ISSUE** a preliminary and permanent injunction against Defendants pursuant to Rule 65 of the Federal Rules of Civil procedure, ordering Defendant's and their successors in office to: **(a) ORDER** that Defendants Centurion Inc., Centurion of Idaho LLC and Siegert will increase the staffing levels in Medical so that NCCHC Access to Care standard P-A-01 will require: **(1)** that a face-to-face encounter will occur within 24 hours or 72 hours on the weekends; **(2)** the inmate must be seen by a qualified health professional within 24 hours, or 72 hours on weekends, for evaluation and treatment; **(3)** that when a inmate has been referred to a provider, the inmate must be seen within 14 days of the sick call assessment when **(i)** indicated by protocol, **(ii)** the inmate requires higher level of evaluation and/or care, **(iii)** the nursing assessment was deferred, or **(iv)** two or more recent contacts were made for the same health complaint. And, will have one Medical Staff member NP-C or RN assigned to work specifically in the Units (not Medical): B Block, C Block, D Block, E Block, F BlockG Block, and H Block who will conduct sick- in those designated Units, and daily pill call as set forth below.

**(b) ORDER** pill call times at ISCC shall be as follows: Morning Pill Call 0600-07:30; Afternoon Pill Call 11:30-12:30; and Evening Pill Call 17:00-18:00 in each of the Housing Units, and if they are 45 minutes late the Unit Staff shall contact Security Shift Commander or Assistance Shift Commander who shall call Medical and order them to immediately conduct it;

**(c) ORDER** Defendant Siegert and her Nurse Monitors shall conduct monthly performance audits at ISCC in respects IDOC SOPs 401.06.03.001 Access to Care, NCCHC Access to Care standard P-A-01, SOP 401.06.03.037 Non-emergency Health Care Requests and Services, NCCHC Nonemergency Health Care Requests and Services Standard P-D-07 for provider appointments and pill call for the two (2) years of the prospective injunctive relief, with quarterly reports being submitted to the Court showing compliance by Defendants Centurion Inc., Centurion of Idaho LLC, and their employees.

3. **(d) ORDER** Defendant Centurion Inc. and Defendant Centurion of Idaho LLC, and their employees and staff, shall place pain management under the same procedures as Chronic Care NCCHC standards and IDOC SOPs, and ensure to follow community based standards of care regarding the administration of pain management medication for plaintiff, to include any previously prescribed care by a off-site community specialist in respects to pain management and dosages.

   **(e) ORDER** that the plaintiff is examined as needed by a local orthopedic specialist regarding his shoulders, neck, back, knees, ankles, and follow any course of prescribed treatment by the specialist in accordance with the standards of community based care, to include but not limited to specific prescribed mediation and dosages.

   **(f) ORDER** the Court shall retain jurisdiction over this action until such time as the Court is satisfied that all constitutional violations found herein have fully and effectively remedied.

4. **AWARD** Plaintiff compensatory damages for pain and suffering, physical and emotional injuries, and punitive damages, against Defendant's jointly and severely, in an amount $59,883,725.00, one (1) year of the current contract between IDOC and Defendants Centurion Inc. and Centurion of Idaho LLC.

5. **AWARD** Plaintiff pursuant to law full costs, including attorney, paralegal and investigation fees and incurred in this action; and

6. **GRANT** any further relief that this Court may grant as deemed just and appropriate.

**I. DECLARATION UNDER PENALTY OF PERJURY**

I have read and the contents thereof, and it is true and correct to the best of my knowledge and belief. 28 U.S.C. § 1746; 18 U.S.C. § 1621; and

I [ ] gave to the facility Paralegal or designee , or, [X] deposited the foregoing in the Prison Legal Mail Box, to have the foregoing electronically transmitted to the Clerk of the Court for filing per General Order No. 342.

**Executed at** ISCC , **Boise, ID, on** 02 / 24 /2023 .

*Jimmy C. Moore*
Plaintiff Jimmy C. Moore

COMPLAINT AND DEMAND FOR JURY TRIAL - 20