UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JIMMY C. MOORE,<br><br>                Plaintiff,<br><br>v.<br><br>RANDY VALLEY, III; sued in his official capacity, for injunctive relief, and his successor in office; RONA SIEGERT; CORIZON, INC.; CORIZON LLC; J. DOE 1; REBEKAH HAGGARD; STEVEN MENARD; TONYA MCMILLIAN; GEN BREWER; CMS PLOSS; CENTURION, INC.; CENTURION OF IDAHO LLC; KARA BOYER; MICAH CRAWFORD; KASEY HOLM; RADA SADACHARAN; MURRAY YOUNG; and BRANDON G. ISAACS, sued in their individual and officials capacities, and their successors in office,<br><br>                Defendants. | Case No. 1:23-cv-00090-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

## REVIEW OF COMPLAINT

### 1.    Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend). Moreover, even if a complaint meets the pleading requirements, dismissal under § 1915A is still appropriate if an affirmative defense, such as untimeliness, is an "obvious bar to securing relief on the face of the complaint." *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). Plaintiff claims that he has not been provided with adequate medical treatment

in prison, going as far back as 2015. *Compl.*, Dkt. 3, at 8. Specifically, Plaintiff challenges the treatment he received for a shoulder injury and for chronic pain; Plaintiff also asserts that he frequently goes without his medication for an unacceptable amount of time because "pill calls" at the prison are consistently delayed. Plaintiff sues numerous prison officials, two private companies providing medical treatments to Idaho inmates under contract with the IDOC, and various medical providers who worked for each company.

### A.    *Treatment for Chronic Pain*

Before Plaintiff was incarcerated, he was taking two Tylenol-4 pills, which contain codeine, three times per day to manage pain from a serious injury Plaintiff suffered in 2005. In August 2015, Plaintiff went to prison. At that time, Corizon was the company providing medical treatment to inmates.

Plaintiff informed medical personnel about his pain medication, but that medication was discontinued. It was not until September 2018 that Plaintiff was placed back on his previous pain medication and dosage. *Compl.* at 8–9. This course of treatment—with which Plaintiff was satisfied—continued through September 30, 2021, when Corizon ceased being the contract medical provider for the IDOC.

On October 1, 2021, the new contract medical provider, Centurion, took over Plaintiff's care. The next time Plaintiff needed his pain medication renewed was in December 2021. At that time, Defendant Sadacharan—then the Regional Medical Director for Centurion—discontinued the pain medication because Centurion had a policy of not prescribing any narcotic medication to inmates. *Id.* at 10–11.

During the grievance process on this issue, Defendant Siegert—the Health Services

Director for the IDOC—informed Plaintiff that narcotic medication was, indeed, permitted if prescribed by a medical provider. Plaintiff was then placed back on Tylenol-4 medication, but on a reduced dosage: one pill in the morning, one pill at noon, and two pills in the evening. *Id*. at 12.

In January 2022, Plaintiff was informed that he was scheduled to see the Regional Medical Director with respect to his pain management treatment. At some later point, Defendant Sadacharan was replaced as Regional Medical Director by Defendant Dr. Young. Plaintiff's appointment with the Regional Medical Director did not take place.

Instead, on August 26, 2022, Plaintiff was evaluated by Defendant Dr. Isaacs. Isaacs agreed that Plaintiff's requested dosage of Tylenol-4 was appropriate for his treatment. However, because former medical director Shadacharan had instituted the no-narcotic policy, Isaacs said he could not prescribe Plaintiff's preferred dosage before speaking with Young, the new medical director. *Id*. at 13.

Young has allegedly continued to support Centurion's and/or Sadacharan's no-narcotic policy. *Id*. However, it appears from the Complaint that Plaintiff has still been prescribed Tylenol-4, albeit at a reduced dosage that he claims is insufficient to treat his chronic pain.

### B.    *Treatment for Shoulder Injury*

On December 24, 2020, Plaintiff was subjected to a use of force by correctional officers. The officers injured Plaintiff's right shoulder, and Defendant CMS Ploss was called to the scene. One of the officers asked Ploss if Ploss would like to evaluate Plaintiff. According to Plaintiff, Ploss responded, "No he's breathing," and then left. *Id*. at 14.

Plaintiff told the shift commander that Ploss had refused to examine him. The shift commander then spoke with Ploss. Ploss stated that he had, in fact, examined Plaintiff, that "there was nothing wrong with him," and that Plaintiff should "put in an HSR [Health Services Request] for his pain." *Id*. at 14.

During the grievance process with respect to Defendant Ploss's alleged failure to examine Plaintiff, Defendant Brewer reviewed Plaintiff's chart and responded: "CMS Ploss documented you were yelling (exchanging air) – Color was within normal limits of your right shoulder, arm and hood. It was reported that you were using your right arm to punch the cell door w/o difficulty." Dkt. 3-4 at 8.

Defendant McMilian also responded to the grievance: "I have reviewed your chart. It appears that when you were assessed[,] [y]ou were agitated. According to medical staff you were hitting the cell door with your right arm without difficulty. If you are in pain please submit an HSR." *Id*. at 9.

Siegert denied Plaintiff's grievance appeal, stating, "A review of [your] medical record shows you were assessed by medical staff but that you were very agitated which made assessment difficult." *Id*. at 11.

Plaintiff was evaluated for his right shoulder injury by an off-site provider in February 2022. *Compl*. at 15. Following an MRI on Plaintiff's shoulder, the doctor told Plaintiff that his "supraspinatus and infraspinatus are completely torn and medially retracted." *Id*. (emphasis omitted). The doctor discussed shoulder surgery with Plaintiff, but Plaintiff told the doctor it was "too late." *Id*. The Complaint contains no allegations about Plaintiff's shoulder treatment after this appointment with the offsite provider.

### C.    *Pill Call Delays*

Plaintiff asserts that pill call, where inmates go to receive their medication, was held three times daily when Corizon was in charge: at 6:30 am, 12:00 pm, and 4:30 pm. Once Centurion took over, however, pill calls were delayed. As a result, Plaintiff has had to go too long without his prescribed medication, and at one point Plaintiff spent around 17 hours in severe pain because of the delays. Defendant Siegert has acknowledged that pill calls have been late and has told Plaintiff she would monitor this issue. However, the delayed pill calls have continued. *Compl*. at 16.

### 3.    Discussion

### A.    *Standards of Law*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. *Compl*. at 17–18. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a defendant whose only role in a constitutional violation involved

the denial of an administrative grievance cannot be held liable under § 1983, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function (such as Corizon or Centurion), a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function).

Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can

reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011). Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations— including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible.  *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious

harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir.

1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to

the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Accordingly, prison medical providers do not act with deliberate indifference solely by disagreeing with an outside doctor's treatment recommendation or by choosing a different treatment than that requested by an inmate. However, if the prison provider's chosen treatment proves ineffective, a continued refusal to try other treatments can constitute deliberate indifference.

In *Snow*, for example, the Ninth Circuit held that a genuine factual issue existed as to whether providers violated the Eighth Amendment by denying double hip replacement surgery to an inmate whose hips had degenerated so badly that he could not walk and who was in constant, severe pain. 681 F.3d at 988. Evidence suggested that providers had "ignored outside expert advice, relying solely on their own medical judgment for three

years before eventually approving surgery." *Id*. This was sufficient to raise an inference of deliberate indifference even though a "medication-only course of treatment may have been medically acceptable for a certain period of time." *Id*. At some point, ignoring a "long term" recommendation of an outside provider may become "medically unacceptable." *Id*.

A court's review of a prison medical provider's choice of treatment must be especially deferential where the issue is the type or amount of pain medication an inmate should receive. In such cases, the court "is asked to pass judgment on the attempts by prison medical staff to navigate between" the risk of "debilitating pain" and the competing risk of addiction. *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (unpublished). Where a prison medical provider believes in good faith that a certain course of pain treatment might "create or enable" a risk of addiction, the provider's decision not to provide that treatment "cannot be considered an act of deliberate indifference." *Id*.

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Thus, if a medical treatment is denied because of a blanket policy— rather than an individualized determination of the appropriate treatment for the particular inmate—a factfinder may infer deliberate indifference. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039–40 (9th Cir. 2015); *Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001) (unpublished).

If, however, prison medical providers make an individualized assessment and choose a treatment that, in their informed judgment, is medically appropriate, a plaintiff generally cannot establish deliberate indifference. *See Lamb*, 895 F.3d at 760; *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). In such a case, a plaintiff must plausibly

allege that the defendants intentionally interfered with appropriate medical diagnosis and treatment—for example, by "creat[ing] a pretextual report to support denial" of a requested treatment. *Norsworthy*, 87 F. Supp. 3d at 1117.

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

### B.    *Claims of Inadequate Shoulder Treatment against Defendants Ploss and Centurion*

Plaintiff claims that the treatment for his right shoulder has been inadequate. However, the only allegations about that treatment are (1) that Defendant Ploss did not adequately examine Plaintiff on December 24, 2020, the date of the injury, and (2) that Plaintiff's shoulder was examined by an outside doctor in February 2022.

The allegations against Defendant Ploss do not support a reasonable inference that Ploss subjectively knew of a substantial risk of serious harm to Plaintiff on December 24, 2020, yet failed to act to prevent it. Plaintiff's own submissions show that Ploss observed Plaintiff the day of the injury and reported findings in Plaintiff's medical chart. That

Plaintiff believes the examination was superficial or insufficient does not plausibly allege deliberate indifference on Ploss's part.

Nor does the Complaint plausibly state an Eighth Amendment claim against Corizon or Centurion for inadequate shoulder treatment. When Plaintiff was seen by an offsite medical provider, the doctor determined that Plaintiff's shoulder was torn and recommended surgery. However, it was Plaintiff himself who evidently refused the surgery, telling the doctor it was "too late." Moreover, there is nothing in the Complaint plausibly suggesting that either Corizon or Centurion had a policy or practice of inadequately treating inmates' injuries. Plaintiff simply has not plausibly alleged that any Defendant acted with deliberate indifference with respect to the medical care Plaintiff received for his right shoulder injury.

### C.    *Claims of Inadequate Pain Management against Corizon and its Employees*

Plaintiff complains that Corizon and its employees failed to adequately treat his pain from August 2015 to September 2018. *Compl.* at 8–9.

In Idaho, the statute of limitations period for § 1983 claims is two years. *See* Idaho Code § 5-219; *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985) (holding that the statute of limitations period for § 1983 claims is the statute of limitation period for personal injuries in the state where the claim arose), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Although state law governs the limitations period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim

accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he can show that the statute should have been tolled (or paused) for a certain period of time during the deadline period within which he should have filed the lawsuit. Pursuant to PLRA, the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975); *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive

knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*.

Here, Plaintiff was without his preferred medication and dosage from August 2015 to September 2018. However, Plaintiff *did* receive his requested dosage of his requested medication from September 2018 to September 2021, when Corizon ceased being the contract medical provider. That is, Plaintiff's claims against Corizon and its employees for inadequate pain management treatment appear to have arisen in September 2018 at the latest, meaning that any suit challenging that treatment should have been filed by September 2020.

But Plaintiff did not file the Complaint in this action until February 24, 2023, at the earliest.[2] Thus, Plaintiff's pain treatment claims relating to this time period appear barred by the statute of limitations. If Plaintiff believes he can show that these claims are not time-

---

[2] Prisoners are usually entitled to the benefit of the "mailbox rule," which provides that a legal document is deemed filed on the date the prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions).

barred, he may file a motion for reconsideration with respect to these claims.

### D. Claims of Inadequate Pain Management Treatment against Centurion, Valley, Siegert, and Plaintiff's Treating Medical Providers

Plaintiff's Complaint, liberally construed, appears to state colorable claims of inadequate pain management against Defendants Siegert, Sadacharn, Young, and Isaacs. These individuals are alleged either to have personally participated in Plaintiff's pain treatment or, as supervisors, to have known of the alleged inadequate treatment and failed to remedy the situation. Additionally, the alleged blanket policy against prescribing narcotics supports a plausible *Monell* claim against Centurion. Plaintiff will be allowed to proceed on these claims.

Though Defendant Warden Valley was not personally involved in the alleged constitutional violations, he is in a position of authority to implement any injunctive relief ordered in this action. Therefore, Plaintiff will be permitted to proceed against Valley on his pain management claims, but only for injunctive relief. *See Rounds*, 166 F.3d at 1036.

### E. Claims of Delayed Pill Call against Centurion, Siegert, and Valley

The Complaint plausibly alleges that Centurion has a practice of delaying pill call. Defendant Siegert was informed of the delays but allegedly did not ensure timely pill calls. Thus, Plaintiff may proceed on his pill-call claims against these two Defendants.

In addition, for the reasons explained above, Plaintiff may proceed on his pill-call claims, for injunctive relief, against Defendant Valley.

### F. Claims against Defendants Haggard, Menard, McMilian, Brewer, Boyer, Holm and Crawford

Plaintiff's claims against Defendants Haggard, Menard, McMilian, Brewer, Boyer,

Holm, and Crawford are based solely on these Defendants' status as supervisors or as responders during the grievance process. There are no allegations that any of these Defendants personally participated in Plaintiff's medical treatment or knew of, yet failed to prevent, the alleged constitutional violations. Therefore, all claims against these Defendants must be dismissed as implausible.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[3] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

Plaintiff will be responsible for serving a summons and the Complaint upon

---

[3] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

Defendants by formal service of process or by obtaining signed waivers of service of summons from each Defendant or their counsel. Plaintiff must do so within 90 days. If he does not, his claims against unserved Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

## ORDER

**IT IS ORDERED:**

1.     Plaintiff's Reply Motion to the Court's Order and Notice of Intent to Dismiss, in which Plaintiff correctly states that he has paid the entire filing fee for this action (Dkt. 11), is NOTED. (Due to an internal processing error, Plaintiff's final fee installment payment was not initially entered on the docket.)

2.     Plaintiff may proceed on his Eighth Amendment claims, as described above, against Defendants Valley, Siegert, Centurion, Inc., Centurion of Idaho LLC, Sadacharan, Young, and Isaacs.

3.     All other claims against all other Defendants are DISMISSED. Corizon, Inc., Corizon LLC, Rebekah Haggard, Steven Menard, Tonya McMilian, Gen Brewer, CMS Ploss, Kara Boyer, Micah Crawford, and Kasey Holm are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[4]

---

[4] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint

4.     This Order serves as formal notice that Plaintiff must complete one of the

two following actions, as to each Defendant, within 90 days:

    a.     <u>Formal Service of Process</u>:

        i.     To obtain a summons from the Clerk of Court, Plaintiff must

file a "Request for Issuance of Summonses," which must

provide the names and service addresses of each Defendant to

the Clerk of Court. Thereafter, the Clerk of Court will prepare

and issue the summonses and provide them to Plaintiff.

        ii.     Plaintiff must serve a summons and a copy of the complaint

upon each Defendant by formal service of process, *see* Federal

Rule of Civil Procedure 4(c). Each type of Defendant must be

served in the specific manner specified in the subsection of

Rule 4 that applies to the particular defendant; for example, the

rules for serving individuals are different for the rules for

serving entities or local governments. *See* Fed. R. Civ. P. 4(e)

through (j). Simply mailing the complaint to the defendants or

their lawyers is not sufficient service of process.

        iii.     If Plaintiff chooses to use formal service of process, it must be

accomplished pursuant to Rule 4(c), including by a person

---

supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

qualified according to Rule 4(c)(2).

iv.    Immediately after service, the person serving the summons and complaint must file a "Return of Service" with the Clerk of Court to show the date, time, manner of service, and person upon whom the documents were served. If this document is not filed during or immediately after the 90-day service deadline, the complaint will be dismissed without prejudice.

b.    <u>Waiver of Service of Summons</u>:

i.    Alternatively, Plaintiff can obtain "Waiver of Service of Summons" forms by requesting them from the Clerk of Court.

ii.    Plaintiff can prepare and send to each Defendant (not their attorney) a completed waiver form and a copy of the complaint, following Rule 4(d). Plaintiff must enter the date the waiver is being sent to the Defendant on each form before sending the waiver. The Defendant then has 30 days from the date entered on the form to sign and file the waiver if they choose to waive service. Defendants are not required to waive service.

iii.    Plaintiff must send out the waivers of service exactly as specified in Rule 4(d).

iv.    If a defendant chooses to waive service, then the defendant will file the waiver of service of summons with the Clerk of Court, and the defendant is obligated to file an answer or permissible

pre-answer motion, or the defendant may be subject to entry of default.

v.   If a defendant does not agree to waive service and does not file the waiver of service within the deadline, then the Plaintiff must use formal service of process (see above) to serve each Defendant according to Rule 4 within 90 days after issuance of this Order. If Plaintiff needs an extension of time to accomplish formal service of process after defendants fail to return waivers of service, then Plaintiff must file a "Motion for Extension of Time for Service under Rule 4(m)."

5.   If Plaintiff does not accomplish formal service of process or ensure that a signed waiver of service of summons for each defendant has been filed by the defendant within 90 days after issuance of this Order, all claims against any unserved Defendants will be subject to dismissal without prejudice, with or without additional notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

6.   After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

7.   Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

8.   Pursuant to General Order 324, this action is hereby returned to the Clerk of

Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 14, 2023

David C. Nye
Chief U.S. District Court Judge